UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

TAMIKA DANIELS,
    *Plaintiff*,

v.                                                                                                                                                                      No. 3:23-cv-415 (JAM)

HOME DEPOT USA INC.,
    *Defendant*.

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

    This case is about an ordinary household errand that allegedly went horribly wrong. The plaintiff claims that, while she was waiting for her friend outside a Home Depot store, a store employee accosted her in the parking lot with false and explicitly racist accusations of stealing from the store. She has sued Home Depot for intentional and negligent infliction of emotional distress.

    Home Depot has moved to dismiss, arguing that the plaintiff lacks standing and that she has failed to state a claim. I do not agree and will deny the motion to dismiss.

**BACKGROUND**

    Plaintiff Tamika Daniels and her friend, Emmanuel Ford, are Black.[1] One day, Daniels gave Ford a ride to a Home Depot store so that he could use a machine inside the store to mix some cans of paint.[2] Ford put his cans into a shopping cart and wheeled them inside, where an employee mixed them and returned them to the cart.[3] Ford then brought the cans back out to the parking lot where Daniels was waiting in her car.[4]

---

[1] Doc. #1 at 1-2 (¶¶ 3, 6).
[2] *Id.* at 1 (¶ 3).
[3] *Ibid.*
[4] *Ibid.*

But a Home Depot employee followed Ford out of the store, saying loudly, "[t]hat's all you people ever do is steal," and "you people are nothing but a bunch of no good thieves."[5] The employee next turned on Daniels, saying words to the effect of: "That's all you people do. You're just waiting for him; you're the getaway driver!"[6] The Home Depot employee then added that she had called Ford a "thief," but that "if she were a racist, 'she would have called him a [n-word].'"[7]

The employee also grabbed Ford's shopping cart to prevent him from unloading his cans of paint.[8] Daniels was "frightened" and left "badly shaken," and she alleges that she has suffered "severe and ongoing emotional distress for which she has required mental health treatment."[9]

## DISCUSSION

Home Depot has moved to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Under these rules, a complaint may not survive unless it alleges facts that, taken as true, offer plausible grounds to sustain both federal jurisdiction and the plaintiff's grounds for relief on the merits. *See Brownback v. King*, 592 U.S. 209, 217 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[10]

It is a basic rule that when a defendant moves to dismiss a complaint on the pleadings, a court "is not engaged in an effort to determine the true facts," because "[t]he issue is simply whether the facts the plaintiff alleges, if true, are plausibly sufficient to state a legal claim." *Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016). "For that reason, the court, in judging the sufficiency of the complaint, must accept the facts alleged and construe ambiguities in the light

---

[5] *Id.* at 2 (¶ 4).
[6] *Id.* at 2 (¶ 6).
[7] *Ibid.*
[8] *Ibid.*
[9] *Id.* at 2 (¶ 7).
[10] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations from quotations of cases cited in the ruling.

most favorable to upholding the plaintiff's claim." *Ibid.*; *see also Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) (same).

Some of the legal issues in dispute in this case involve Connecticut state law. Absent a decision from a State's highest court on a question of state law, a federal court's role is to carefully predict how the highest court of the State would rule on the issue presented. *See Haar v. Nationwide Mut. Fire Ins. Co.*, 918 F.3d 231, 233 (2d Cir. 2019). In doing so, the federal court should give proper regard to the relevant rulings of the State's lower courts and may also consider decisions from other jurisdictions on the same or analogous issues. *See In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013).

### *Standing*

Home Depot argues that the Court lacks jurisdiction because Daniels does not have standing. Article III of the U.S. Constitution limits the jurisdiction of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. To establish Article III standing, a plaintiff must show (1) an injury in fact that is concrete, particularized, and actual or imminent, not conjectural or hypothetical; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023).

The Supreme Court has recognized that "[v]arious intangible harms" can be "concrete" injuries for purposes of standing if they "are injuries with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, Daniels alleges two common law torts—intentional infliction of emotional distress and negligent infliction of emotional distress. Both these torts are for intangible harms that are traditionally recognized as a basis for lawsuits in American courts.

*See, e.g.*, RESTATEMENT (SECOND) OF TORTS, § 46 (Outrageous Conduct Causing Severe Emotional Distress); *Gerber v. Herskovitz*, 14 F.4th 500, 506 (6th Cir. 2021) (Sutton, J.) (well-pleaded allegation of emotional distress enough to confer Article III standing because the complaint alleges "an injury—extreme emotional distress—that has stamped a plaintiff's ticket into court for centuries"). Therefore, Daniels has alleged a type of injury that is enough to sustain federal jurisdiction over her claims.

The United States Supreme Court has made clear that "standing in federal court is a question of federal law, not state law." *Hollingsworth v. Perry*, 570 U.S. 693, 715 (2013). More recently, the Second Circuit has similarly ruled that "[f]ederal law sets the parameters on what is necessary to possess Article III standing" and that "state law can neither enlarge nor diminish those requirements." *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370, 385 (2d Cir. 2021).

Home Depot's initial briefing cites only state law cases rather than any federal law cases to support its jurisdictional argument that Daniels lacks standing. After I raised this concern at oral argument, Home Depot filed a supplemental brief stating that Home Depot does not challenge the Court's federal Article III subject matter jurisdiction but that the action should be dismissed for lack of standing under state law. The Second Circuit has ruled that "[w]here, as here, jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution *and applicable state law* in order to maintain a cause of

4

action." *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) (emphasis added).[11]

But Home Depot does not explain how state law principles of standing impose a more demanding standard than the federal Article III requirements that Home Depot concedes are satisfied here. So, for example, Home Depot cites a Connecticut case stating that "[s]tanding requires no more than a colorable claim of injury" and that "standing exist[s] although the injury alleged was extremely small."[12] Home Depot does not show that Daniels has failed to allege facts to plausibly meet these minimal injury standards.

Connecticut standing law requires that a plaintiff show that she has been "classically aggrieved." *State v. Bradley*, 341 Conn. 72, 80 (2021). First, the plaintiff must show "a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general interest, such as is the concern of all members of the community as a whole." *Ibid.* Second, the plaintiff "must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]." *Ibid.* "Aggrievement is

---

[11] Although the distinction does matter to the outcome of this ruling, it appears to me that the lack of state law standing in federal diversity cases does not go to federal jurisdiction (as Home Depot has claimed by moving to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)), but rather to the merits of a state law claim. The federal diversity statute, 28 U.S.C. § 1332, does not include a pre-condition that a plaintiff must have standing under state law in order for a federal court to have jurisdiction over a state law claim. Instead, any requirement that a plaintiff have standing under state law must stem from the *Erie* doctrine, which generally requires federal courts to apply state substantive law but not state procedural law when evaluating the merits of a plaintiff's claim. *See generally Resource Group Int'l Ltd. v. Chishti*, 91 F.4th 107, 112 (2d Cir. 2024); *Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893-94 (2d Cir. 2019). State law sometimes imposes a "standing" rule that governs particular types of claims and that is considered to have substantive effect for purposes of the *Erie* doctrine. *See In re Merrill Lynch & Co., Inc., Securities, Derivative and Erisa Litig.*, 597 F. Supp. 2d 427, 431 (S.D.N.Y. 2009) (state law "standing" rule governing who has right to bring a derivative action against a corporation). It is unclear to me, however, that the entire corpus of state law standing rules consists of substantive rules that the *Erie* doctrine requires a federal court to follow.

[12] Doc. #8-1 at 6 (quoting *O'Connor v. QBE Ins. Corp.*, 2015 WL 1588336, at *2 (Conn. Super. Ct. 2015)).

established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." *Ibid.*

The allegations of the complaint easily meet these state law aggrievement requirements. Daniels alleges facts to show that she had a specific, personal, and legal interest that was specially and injuriously affected when Home Depot's employee came to the parking lot to falsely announce "that's all you people ever do is steal," that "you people are nothing but a bunch of no good thieves," and that she was the "getaway driver" for a theft of property from the store. *See Shenkman-Tyler v. Cent. Mut. Ins. Co.*, 126 Conn. App. 733, 744-45 (2011) ("[T]he plaintiff has established aggrievement and, thus, standing, by alleging that [the] conduct toward him . . . negligently caused him direct harm, i.e., emotional distress," and "[t]he fact that all of the plaintiff's interests under the insurance policy were awarded to [a third party] did not affect the plaintiff's standing to bring count four of the contract action alleging negligent infliction of emotional distress").

The rest of Home Depot's arguments about standing are based on assumptions that disregard the allegations of the complaint and that deny the right of Daniels to have the allegations of the complaint interpreted in a light most favorable to her. For example, Home Depot claims that its employee's comments were not "directed at" Daniels.[13] But the complaint expressly alleges that "Mr. Ford and Plaintiff are Black, *and the employee accused Plaintiff in the same terms*."[14] It further alleges that the Home Depot employee stated specifically to Daniels: "You're just waiting for him; you're the getaway driver!"[15] Only by ignoring the

---

[13] *Ibid.*
[14] Doc. #1 at 2 (¶ 6) (emphasis added).
[15] *Ibid.*

6

allegations of the complaint can Home Depot argue that its employee's comments were not directed at Daniels.

Home Depot similarly argues that Daniels lacks standing because the "gravamen of the Plaintiff's case relates to her friend, not to the Plaintiff."[16] But this argument misunderstands basic principles of standing. A plaintiff's standing to sue a defendant does not turn on whether the defendant has *also* harmed someone else. If a defendant injures two people, it means that both people have standing, not that only the most seriously injured person has standing. So it is irrelevant if the "gravamen" of the complaint describes misconduct directed toward Ford, because that does not deprive Daniels of the right to sue based on the conduct that affected her.

Relatedly, Home Depot complains that Ford himself has filed a separate lawsuit arising from this incident.[17] But Home Depot makes no showing that the fact that Ford has filed a lawsuit means that Daniels has no right to seek relief. None of the cases cited by Home Depot stand for the proposition that if a defendant harms multiple people in one incident, only the first one who sues has the right to seek relief. So it is irrelevant that Ford has also filed a lawsuit against Home Depot.

Home Depot also argues that Daniels "should not be permitted to exploit whatever damage Mr. Ford claims to have endured for her own personal benefit."[18] But the complaint explicitly seeks relief for injuries to Daniels, not to Ford.[19] This argument is based on a clear misreading of the complaint.

Home Depot accuses Daniels of making a "gratuitous" statement that she is Black and argues that without this allegation "the reader would have no reason to believe the comments

---

[16] Doc. #8-1 at 6
[17] *Id.* at 3-4.
[18] *Id.* at 7.
[19] Doc. #1 at 2-3 (¶¶ 7-13).

were racially motivated."[20] But the harm that Daniels experienced as a victim of racially hostile language is largely based on the very fact that she is Black (as well as the fact that she was falsely accused of helping commit a crime). Her race is not "gratuitous" as Home Depot claims.

In short, Home Depot has failed to show that Daniels lacks standing under federal or state law to assert her claims. Accordingly, I now turn to Home Depot's additional arguments that the complaint does not allege plausible grounds for relief.

### *Vicarious liability*

Home Depot argues that it cannot be liable in *respondeat superior* for the alleged acts of its employee. Under Connecticut's "well established vicarious liability jurisprudence, an employer is liable for the negligent and willful torts of an employee that occurred within the scope of employment and were done in furtherance of the employer's business." *Lopez v. William Raveis Real Estate, Inc.*, 343 Conn. 31, 57 (2022). "Unless [the employee] was actuated at least in part by a purpose to serve a principal, the principal is not liable." *Fiano v. Old Saybrook Fire Co. No. 1, Inc.*, 332 Conn. 93, 102 (2019).

Of course, it can always be argued that it does not serve the employer's interest for an employee to engage in tortious conduct that later leads to a lawsuit against the employer. But the test is not whether in hindsight the employee's action ultimately redounded to the employer's benefit. Instead, the test is whether the employee's conduct was taken within the scope of employment and motivated at least in part by an intent to benefit the employer, even if the employee's efforts were errant or misguided so that they did not ultimately benefit the employer. In this respect, "Connecticut courts draw a distinction between *unauthorized or misguided* efforts by employees in furtherance of an employer's business—for which employers may be held

---

[20] Doc. #8-1 at 6-7.

8

liable, and *abandonment* of an employer's business—for which employers may not be held liable." *Nathans v. Offerman*, 922 F. Supp. 2d 271, 275 (D. Conn. 2013) (emphasis added).

For example, in *Pelletier v. Bilbiles*, 154 Conn. 544 (1967), the Connecticut Supreme Court held that a store owner could be liable for the acts of an employee who assaulted a plaintiff customer. It was part of the employee's job to maintain order inside the business. After the plaintiff allegedly misbehaved inside the store, the employee "escorted the plaintiff outside of the store" and then "commenced to batter the plaintiff severely." *Id.* at 546-47. The Connecticut Supreme Court stated that "[t]he beating of an unruly customer . . . is an extremely forceful, although misguided, method of discouraging patrons of the [store], including the plaintiff, from causing disturbances on the premises in the future." *Id.* at 548. The court ruled that "[t]he fact that the specific method a servant employs to accomplish his master's orders is not authorized does not relieve the master from liability." *Ibid.* Moreover, "the fact that the battery by [the employee] may have been motivated by personal animosity as well as by an overzealous regard for his duties as an employee does not exonerate the defendant." *Ibid.* And lastly, "[a] master does not escape liability merely because his servant loses his temper while he is conducting the master's business." *Ibid.*

Here, the complaint does not expressly allege that Home Depot's employee was acting within the scope of her employment responsibilities for Home Depot. But it alleges facts that plausibly establish this to be so. It alleges facts to suggest that the employee was acting to stop theft of Home Depot's property from the store—that is, to benefit Home Depot and well within the ordinary scope of an employee's duty to safeguard an employer's property. As *Pelletier* makes clear, the fact that Home Depot's employee lost her temper and engaged in unauthorized

9

and misguided actions to abuse Daniels does not mean that the employee's actions cannot be attributed to Home Depot.

In short, the complaint alleges enough facts to plausibly suggest that Home Depot's employee was acting within the scope of her employment and at least in part to benefit Home Depot. Accordingly, Home Depot has failed to show that as a matter of law it may not be vicariously liable for the alleged misconduct of its employee.

### *Intentional infliction of emotional distress*

Home Depot argues that the complaint fails to allege facts to plausibly support a claim for intentional infliction of emotional distress. To state a claim for intentional infliction of emotional distress, "the plaintiff must establish four elements: (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Sepega v. DeLaura*, 326 Conn. 788, 800 n.6 (2017) (quoting *Appleton v. Bd. of Educ.*, 254 Conn. 205, 210 (2000)).

Not every insult or abusive act is severe enough to serve as a predicate for a claim of intentional infliction of emotional distress. "Conduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Perez-Dickson v. City of Bridgeport*, 304 Conn. 483, 527 (2012). Instead, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Ibid*. "Generally, the

case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, Outrageous!" *Ibid.*

A judge may decide in the first instance as a matter of law whether a defendant's conduct is legally sufficient to satisfy the requirement that it be extreme and outrageous. *Ibid.* But if reasonable minds could disagree about whether the conduct is extreme and outrageous, then the issue is one for a jury—not a judge—to decide. *Ibid.*

Could an average member of the community reasonably believe it was extreme and outrageous for a Home Depot employee to falsely accuse a person of stealing from the store and to accuse that person in racist terms of stealing because they are Black? I think so. A reasonable person could view the explicitly race-based hostile conduct of Home Depot's employee as atrocious, exceeding all possible bounds of decency, and utterly intolerable in a civilized community. Because—at a minimum—reasonable minds could disagree about whether the alleged conduct was extreme and outrageous, a jury should decide this issue.

Home Depot's contrary arguments rely on ignoring key allegations of the complaint and overlooking controlling legal principles. For example, Home Depot argues that there is "nothing inherently racist" about the employee's remarks that "all you people ever do is steal," that "[y]ou people are nothing but a bunch of no good thieves," and "[t]hat's all you people do."[21] But "[a]s the Supreme Court has explained, certain words standing alone might appear to be benign but nonetheless may be understood as racist code words, which may in part depend on the speaker's inflection, tone of voice, local custom, and historical usage." *Tyson v. Dep't of Energy & Env't Prot.*, 2023 WL 6050049, at *9 (D. Conn. 2023). Thus, in *Tyson*, I ruled that abusive "comments to [a plaintiff] about 'your people' also raise an issue of fact whether the context and content of

---

[21] *Id.* at 12.

his statements were racially motivated." *Ibid.* Many other courts have ruled that hostile use of the term "you people" and "your kind" may be reasonably interpreted in context as a reference to the victim's race. *See Creacy v. BCBG Max Azria Grp., LLC*, 2017 WL 1216580, at *8 (S.D.N.Y. 2017) (collecting cases). Home Depot cites no precedent to the contrary.

Even if there were any ambiguity on the facts alleged here, it is resolved by the employee's invocation of the n-word.[22] As the Second Circuit has observed, this "epithet has been described as a term that sums up . . . all the bitter years of insult and struggle in America, a pure anathema to African-Americans, and probably the most offensive word in English." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 266 (2d Cir. 2023) (citation omitted).

And it is not simply that invocation of the n-word is so clearly a reference to race. It is also that use of the n-word may have a particularly painful effect on the victim. Thus, the Second Circuit has repeatedly recognized in the hostile work environment context that "perhaps no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as 'n****r.'" *Ibid.* (quoting *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 24 (2d Cir. 2014)).

Home Depot argues that "accusing someone of being a thief is not inherently racist, nor is being free of being accused of perpetrating theft a recognized or protected right for which Plaintiff may seek redress."[23] But the complaint does not allege simply that a Home Depot employee accused Daniels of being a thief. The complaint alleges that Home Depot's employee accused Daniels of thieving and did so by reference to the n-word and by explicitly invoking a malignant stereotypical assumption that thieving is what Black people do. So it is irrelevant that

---

[22] Home Depot makes a preposterous effort to sanitize the employee's use of the n-word. *See ibid.*
[23] *Id.* at 7.

12

"accusing someone of being a thief is not inherently racist" or that Daniels does not have a "protected right" to be "free of being accused of perpetrating theft."

Other courts in Connecticut have upheld claims for intentional infliction of emotional distress involving hostile and explicitly race-based comments. For example, in *Salman v. Yale Univ.*, 2023 WL 3317253 (Conn. Super. Ct. 2023), the plaintiff—a Muslim of Middle Eastern race—alleged that he lost his job as a delivery driver after the defendant raised unfounded fears that he was a security threat. Specifically, the plaintiff alleged that he "overheard one of the defendants' employees state to other employees 'that Muslim asked me about security, he is a threat'" and that "he overheard the same employee call him a 'Muslim terrorist.'" *Id.* at *1. The court ruled that "the alleged conduct, which involves *suspicions of potential criminal behavior based on impermissible racial stereotyping*, rises to the level necessary to sustain a legally sufficient claim for intentional infliction of emotional distress." *Id.* at *6 (emphasis added). *See also Bremmer-McLain v. City of New London*, 2012 WL 2477921, at *12 (Conn. Super. Ct. 2012) (denying a motion to strike a claim for intentional infliction of emotional distress based on an attorney's berating of victim by means of repeated use of the n-word while telling the plaintiff to leave a meeting); *Bakhit v. Safety Markings, Inc.*, 33 F. Supp. 3d 99, 104-105 (D. Conn. 2014) (denying motion to dismiss claim for intentional infliction of emotional distress based on complaint that was "replete with abhorrent and derogatory racial epithets and other abusive language and practices").

When a court decides if particular conduct is extreme or outrageous, it may take into account the public policy of Connecticut. Courts in Connecticut have long recognized "a strong public policy expressed by statute in our state prohibiting discrimination on the basis of race, sex or national origin." *Leone v. New England Commc'ns*, 2002 WL 1008470, at *3 (Conn. Super.

Ct. 2002); *see also Simms v. Chaisson*, 277 Conn. 319, 336 (2006) (upholding a substantial award of attorney's fees on emotional distress claim for racial harassment because "the plaintiffs' successful action accomplished a public policy goal: [t]he general deterrence of acts of intimidation and harassment based on bias or bigotry.").

The cases cited by Home Depot are either distinguishable or not persuasive. Most of the cited cases involve race-based comments that arose in the employment context which is not the context presented here. Although Connecticut courts do not categorically bar claims for intentional infliction of emotional distress that arise in the workplace context, they are somewhat more reluctant to sustain such claims because of the fact that "individuals in the workplace reasonably should expect to experience some level of emotional distress." *Perodeau v. City of Hartford*, 259 Conn. 729, 757 (2002); *Sebold v. City of Middletown*, 2007 WL 2782527, at *30 (D. Conn. 2007) (noting that *Perodeau*'s concern about employee expectations applies to workplace-based claims for intentional infliction of emotional distress); *Thibault v. Barkhamsted Fire Dist.*, 2013 WL 6038259, at *7 (Conn. Super. Ct. 2013) (discussing how the concerns stated in "*Perodeau* must necessarily stand for the proposition that a plaintiff claiming intentional infliction of emotional distress in the employment context must meet a high threshold to establish extreme and outrageous conduct").[24]

Several of the cases cited by Home Depot did not involve the use of racial epithets. *See Oliver-Benoit v. Atalian Glob. Servs.*, 2023 WL 34658, at *1 (D. Conn. 2023); *Molina v. Eagle Leasing Co.*, 2014 WL 3864879, at *1 (D. Conn. 2014); *Jamilik v. Yale Univ.*, 2007 WL 214607,

---

[24] To be sure, the *Perodeau* decision involved a claim for negligent infliction of emotional distress, and the Connecticut Appellate Court has declined to apply *Perodeau* to a claim for intentional infliction of emotional distress. *See Benton v. Simpson*, 78 Conn. App. 746, 756 (2003). But the Connecticut Supreme Court has subsequently cited *Perodeau* in the course of its evaluation of a workplace-based claim for intentional infliction of emotional distress. *See Perez-Dickson*, 304 Conn. at 528; *see also Bandy v. Esserman*, 2018 WL 1177436, at *5 n.4 (Conn. Super. Ct. 2018).

14

at *1-2, 4 (D. Conn. 2007). The court in *Oliver-Benoit* highlighted this difference, noting that the allegations were "distinguishable from cases where defendants' conduct has been found to be extreme and outrageous . . . . [W]hen courts have found racial discrimination to be extreme and outrageous, the alleged conduct has involved racial slurs and displays of racist symbols." 2023 WL 34658, at *4.

Another case cited by Home Depot involved racial slurs but it was unclear whether they were used in the plaintiff's presence. *See Burr v. Howell*, 2003 WL 21675848, at *4 (Conn. Super. Ct. 2003). By contrast, the court otherwise acknowledged that "[s]everal Connecticut Superior Court cases have found racial slurs, or comments about national origin to be extreme and outrageous conduct." *Ibid.*

In *Coleman v. S. Cent. Conn. Reg'l Water Auth.*, 2009 WL 350597 (D. Conn. 2009), the plaintiff alleged racist comments made toward him by his supervisor. Judge Chatigny ruled that "[v]iewed in the context of the reported decisions dealing with a supervisor's discriminatory comments to an employee," he did "not think a jury could reasonably find that the comments were so outrageous in character and extreme in degree as to go beyond all bounds of decency." *Id.* at *5. On the other hand, he acknowledged from the outset that "[a] supervisor's discriminatory comments directed to an employee based on the employee's race, religion, or ethnicity will provide a cause of action for intentional infliction of emotional distress if they exceed all bounds of decency." *Ibid.* The decision is distinguishable because it involved the employment context and also because it did not involve an additional false accusation that the plaintiff was committing a crime (much less, committing a crime because of his race).

In *Watson v. Wheeler Clinic, Inc.*, 2022 WL 2916825 (D. Conn. 2022), the plaintiff alleged that his employment supervisors "often called the police on black clients, forced black

and Hispanic employees to leave Wheeler by discriminating against them, 'castigated the black intern' in front of Watson, allowed white staff to demean clients, and asked coworkers to bring 'vegetarian and soul food' in anticipation of a black coworker leaving Wheeler." *Id.* at *9. Judge Shea ruled that "these allegations describe an unpleasant, racially biased workplace, [but] they do not meet the standard for 'conduct exceeding all bounds tolerated by a decent society,' even when viewed in a light most favorable to Watson." *Ibid.* Like *Coleman*, the *Watson* decision is distinguishable because it involved the employment context and did not involve a false accusation that the plaintiff was committing a crime, nor committing one because of the plaintiff's race.

Another case cited by Home Depot held only that an employer's failure to prevent another's racial discrimination did not constitute extreme and outrageous conduct. *See Shuler v. Regency House of Wallingford, Inc.*, 2006 WL 118383, at *3-4 (D. Conn. 2006). Although there was also a negative performance evaluation stating that the plaintiff "scared patients because she was 'a large, Black Woman,'" *id.* at *1, this statement is not as severe as the facts presented here, involving face-to-face hostile accusations that the plaintiff was stealing from Home Depot and doing so because she was Black ("that's all you people do").

Lastly, in *Brown v. Mulcahy*, 2007 WL 2363303 (Conn. Super. Ct. 2007), a trial court dismissed a claim for intentional infliction of emotional distress that was based on the conduct of a store security guard who "detained, harassed and assaulted" the plaintiff and who "directed racial slurs at the plaintiff and spit on her." *Id.* at *1. In my view, however, such conduct poses at least a jury question as to whether the conduct was extreme and outrageous. I doubt that the Connecticut Supreme Court would find these facts to be insufficient as a matter of law.

16

In short, I conclude that the complaint alleges enough facts to plausibly support a claim for intentional infliction of emotional distress. Accordingly, I will deny Home Depot's motion to dismiss Daniels' claim for intentional infliction of emotional distress.

### *Negligent infliction of emotional distress*

Home Depot also argues that the complaint does not allege enough facts to plausibly support a claim for negligent infliction of emotional distress. To establish a claim for negligent infliction of emotional distress, a plaintiff must show that: "(1) the defendant's conduct created an unreasonable risk of causing the plaintiff emotional distress; (2) the plaintiff's distress was foreseeable; (3) the emotional distress was severe enough that it might result in illness or bodily harm; and (4) the defendant's conduct was the cause of the plaintiff's distress." *Hall v. Bergman*, 296 Conn. 169, 182 n.8 (2010) (quoting *Carrol v. Allstate Ins. Co.*, 262 Conn. 433, 444 (2003)). The Connecticut Supreme Court has clarified that the first element "essentially requires that the fear or distress experienced by the plaintiffs be reasonable," because "[i]f the fear were unreasonable in light of the defendants' conduct, the defendants would not have recognized that their conduct could cause this distress and, therefore, they would not be liable." *Carrol*, 262 Conn. at 446-47.

Home Depot argues that Daniels fails to allege "that Home Depot was aware of any particular susceptibility Plaintiff had to experiencing emotional distress."[25] But Home Depot cites no authority suggesting that a showing of any "particular susceptibility" is required. All that is required with respect to what Home Depot's employee knew or should have known was that the conduct created an unreasonable and foreseeable risk of causing severe emotional distress to Daniels.

---

[25] Doc. #8-1 at 14.

According to Home Depot, regarding what its employee allegedly said to Daniels, "the average person would shrug it off and disregard comments they knew to be false."[26] This argument ignores "all the bitter years of insult and struggle in America" and what is "a pure anathema to African-Americans." *Banks*, 81 F.4th at 266. A reasonable person could conclude that a Black person should not necessarily "shrug off" being accosted by a Home Depot employee in a store parking lot and falsely accused in vile racist terms of taking part in the theft of Home Depot's property.

Connecticut courts have held that a claim for negligent infliction of emotional distress may be based on racially motivated misconduct. In *Carrol*, for example, the Connecticut Supreme Court upheld a jury verdict against an insurance company that denied a homeowner's insurance claim stemming from a house fire, in light of "the plaintiff's testimony that he had been referred to as a black man and a 'son of a bitch' [which] could have led the jury to find that the plaintiff's race might have played a role in the defendant's conclusion of arson." 262 Conn. at 445. The court concluded that "there was evidence from which the jury could have inferred that the defendant's investigation was not only shoddy, but that it possibly was influenced by racial stereotypes." *Id.* at 447; *see also Salman*, 2023 WL 3317253, at *3-4 (declining to strike a claim for negligent infliction of emotional distress where plaintiff alleged that "the defendants created an unreasonable risk of causing [him] emotional distress by falsely accusing [him] of being a terrorist and having him banned from their facility based on his race, ethnicity, and religion.").

---

[26] *Id.* at 15.

Home Depot claims that the statements directed at Daniels were "decidedly race-neutral."[27] But this argument—again—ignores the words of the complaint as well as the principle that the allegations of the complaint must be construed in a plaintiff's favor.

In short, the complaint alleges enough fact to plausibly suggest that Home Depot is liable to Daniels for negligent infliction of emotional distress. Accordingly, I will deny Home Depot's motion to dismiss the claim for negligent infliction of emotional distress.

## CONCLUSION

For the reasons stated above, the Court denies the motion to dismiss.

It is so ordered.

Dated at New Haven this 12th day of March 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[27] *Id.* at 14.